UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

TRONTEZ MAHAFFEY,

     Plaintiff,

V.

BUREAU OF PRISONS, et al.,

     Defendants.

CIVIL ACTION NO. 5:24-CV-038-KKC

<u>OPINION AND ORDER</u>

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Federal inmate Trontez Mahaffey was previously confined at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"). Proceeding without an attorney, Mahaffey filed a civil rights complaint pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) against Defendants the Bureau of Prisons ("BOP"), FMC Lexington, City of Lexington, Warden David Paul, A.W. Sizemore, Captain Johnson, Lt. Lawson, L. Fisher, and FMC Lexington medical staff. By prior Order, the Court granted Mahaffey's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Thus, the Court must conduct a preliminary review of Mahaffey's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

Upon initial screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is obviously immune from such relief. *See McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates Mahaffey's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations

as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Mahaffey alleges that, while working in the kitchen at FMC Lexington on February 22, 2023, Defendant Lawson shot him in the face with a 40 caliber rubber bullet, which resulted in numerous medical problems including the loss of Mahaffey's right eye. According to an incident report authored by Defendant Fisher, the use of force was preceded by Mahaffey's display of aggression toward officers and his refusal to follow orders. *See* DE. 1-2, pp. 19-23 (Incident Report No. 3737022). But Mahaffey alleges that Fisher "falsely accused" him in the incident report and did not document Lawson's use of force against him until she rewrote the report for a fourth time, 21 days after the incident.

Mahaffey alleges that Defendants Paul, Sizemore, and Johnson failed to acknowledge his grievances and his request that a "separatist" be placed against Lawson. He further alleges that these defendants collectively allowed Lawson to antagonize him while he was housed in the special housing unit ("SHU") and that they allowed someone to tamper with his mail. Additionally, he alleges that Paul, Sizemore, and Johnson prevented him from having visitors while he was in the SHU, interfered with his exhaustion of administrative remedies, and allowed him to be kept in the SHU seven months longer than he should have.

Mahaffey purports to bring claims for money damages under the First, Fourth, Fifth, and Eighth Amendments. Such claims may only be pursued against federal officials under *Bivens*, which held that an individual may "recover money damages for any injuries...suffered as a result of [federal] agents' violation of his constitutional rights." *Bivens*, 403 U.S. at 397. However, a *Bivens* claim is only properly asserted against individual federal employees in their individual capacities. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). Thus, Mahaffey may not bring

2

*Bivens* claims against the BOP, FMC Lexington, or the defendant officers in their official capacities. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."). Accordingly, Mahaffey's claims against the BOP, FMC Lexington, and the defendants in their official capacities will be dismissed.

Although Mahaffey named the City of Lexington as a defendant, his complaint does not include any factual allegations involving the city. Likewise, Mahaffey named "FMC Lexington medical staff" but did not allege any facts concerning his medical care or otherwise implicating such defendants. Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a plaintiff to allege facts sufficient to state a claim for relief that is "plausible on its face." *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017). Since Mahaffey has not alleged that these defendants did or failed to do something to violate his rights, any claims against them necessarily must be dismissed.

Mahaffey also has included a request for injunctive relief in the form of an order requiring the defendant officers to wear body cameras. *See* 5 U.S.C. 702. However, this claim was rendered moot when Mahaffey was transferred out of FMC Lexington. *See Solano-Moreta v. Kizziah*, Civil Action No. 6:18-cv-293-CHB, 2019 WL 2236083 (E.D. Ky. May 23, 2019). Therefore, this claim for relief will be denied.

This leaves Mahaffey's claims for money damages against Defendants Paul, Sizemore, Johnson, Lawson, and Fisher in their individual capacities. Mahaffey alleges that Paul, Sizemore, and Johnson violated his rights by failing to separate him from Lawson, by allowing Lawson to "antagonize" him, by allowing him to be held in the SHU for seven months after his disciplinary

period was complete, by denying him visitors in the SHU, by allowing someone to tamper with his mail, and by interfering with his ability to exhaust his administrative remedies. As an initial matter, the Court notes that Mahaffey vaguely alleges that this group of defendants "allowed" these things to happen but does not indicate that any of these defendants was directly responsible for violating his constitutional rights. A *Bivens* claim must be brought against a particular officer for his or her own acts—not the acts of others. *Ziglar v. Abbasi*, 582 U.S. 120, 141 (2017).

Moreover, Mahaffey has not alleged facts pertaining to these defendants that rise to the level of a constitutional violation. To the extent Mahaffey claims that these defendants allowed Lawson to "antagonize" him, mere threats or verbal abuse are insufficient to state a claim under the Eighth Amendment. *See Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009). *See also see Curtis v. Gaza*, Case No. 4:22cv296, 2022 WL 1289215 (N.D. Ohio Apr. 29, 2022) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (observing that inconveniences and annoyances do not amount to an Eighth Amendment violation).

Mahaffey's vague claim that Paul, Sizemore, and Johnson allowed someone to tamper with his mail also is insufficient to state a claim upon which relief can be granted. Prisoners have "some First Amendment rights to receive mail, subject to the right of prison officials to open a prisoner's incoming mail in accordance with uniformly applied policies deemed appropriate to maintain prison security." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). *See also Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (recognizing a prisoner's liberty interest in receiving his mail). However, Mahaffey provides no details whatsoever concerning the alleged tampering—his barebones allegation does not withstand this Court's initial review. *See McCoy v. Perdue*, No. 1:18-cv-01716, 2018 WL 5841969, at *3 (M.D. Penn. Nov. 8, 2018) (dismissing the petitioner's mail-tampering claim when the complaint failed to set forth any factual averments as to any

4

personal involvement on the part of any named defendants or when or how his mail was tampered with). *See also Eaves v. Moon*, Civil Action No. 3:21-cv-P296-RGJ, 2023 WL 2544319, at *7 (W.D. Ky. Mar. 16, 2023) (explaining that isolated incidents of mail tampering do not constitute a constitutional violation) (collecting cases).

Mahaffey's remaining allegations against Paul, Sizemore, and Johnson are most logically characterized as due process claims. However, the factual allegations are insufficient to sustain a claim upon which relief can be granted. The Sixth Circuit has acknowledged that "segregated confinement of an unusually long duration may constitute an 'atypical and significant hardship' of the sort that triggers due-process protections." *Mosley v. Batts*, No. 19-5355, 2019 WL 8399882, at *3 (6th Cir. Nov. 19, 2019) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). However, Mahaffey's complaint says nothing about the conditions of his confinement while he was in the SHU and does not allege that he was denied due process protections during this time. *See Sandin*, 515 U.S. at 484 (noting that courts should consider "the nature of the confinement and its duration in determining whether it imposes an atypical and significant hardship"); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification and resulting visitor limitations is not an atypical and significant hardship). Finally, it is well-established that inmates have no constitutional right to an administrative grievance process, let alone one they deem efficient and timely. *See Portee v. Holland*, Civil Action No. 6:16-281-GFVT, 2018 WL 2767312, at *4 (E.D. Ky. June 8, 2018) (citing *Argue v. Hoffmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). Accordingly, these claims will be dismissed. The Court also notes that none of Mahaffey's claims against Paul, Sizemore, and Johnson are cognizable under *Bivens* in light of the Supreme Court's decisions in *Ziglar*, 582 U.S. 120, and *Egbert v. Boule*, 596 U.S. 482 (2022).

The Court turns to Mahaffey's claims against Lawson and Fisher. Construing Mahaffey's complaint broadly, he alleges that Lawson used excessive force against him and that Fisher aided Lawson in the use of excessive force and/or failed to protect Mahaffey from it, all in violation of the Eighth Amendment. While prisoners have a constitutionally-protected right to be free from the unreasonable, excessive use of force, *see Poynter v. Whitley Cnty. Detention Ctr.*, 722 F.Supp.3d 745, 754 (E.D. Ky. 2024) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)), the *Bivens* remedy is a judicially-created remedy that may be implied only in limited circumstances. *See Ziglar*, 582 U.S. at 131. Mahaffey's Eighth Amendment claims based upon allegations of excessive force and/or failure to protect do not fall within the three existing contexts in which the United States Supreme Court has recognized a private right of action for damages for a constitutional violation.

Since *Bivens* was decided in 1971, the Supreme Court has found an implied damages action to be available in only three circumstances: (1) where federal officials searched a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar*, 582 U.S. at 131–32. Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 589 U.S. 93, 101-02 (2020). *See also Malesko*, 534 U.S. at 68 (noting that "[s]ince *Carlson* we have consistently refused to extend Bivens to any new context or new category of defendants."). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Fed. Bureau*

6

*of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (explaining that since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb").

The Supreme Court's directive has been clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (quoting *Iqbal*, 556 U.S. at 675). *See also Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril."). Under *Ziglar*, the Court must employ a two-step test to determine whether *Bivens* provides a remedy for alleged misconduct by federal officials. First, a court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of *Bivens*. *Hernandez*, 589 U.S. at 102. (citations omitted). If the Court finds that a claim arises in a new context, the Court then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18). This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136.

Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action. . . . will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), reh'g denied, No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022). "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie." *Egbert*, 596 U.S. at 491–92 (internal citations omitted). *See also Ziglar*, 582 U.S. at 135–36 ("When an issue involves a host of considerations that must

be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them.") (cleaned up).

In this case, Mahaffey's Eighth Amendment claims present contexts that are entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. While, like the claim implied in *Carlson*, Mahaffey's claims sound in the Eighth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 103. Plainly, a prisoner's claims that excessive force was used against him by prison staff and that prison staff failed to protect him from excessive force both arise in different contexts than the claim in *Carlson* of deliberate indifference to a prisoner's medical needs. *See Anderson v. Fuson*, No. 23-5342, 2024 WL 1697766, at *3 (6th Cir. Feb. 1, 2024) (concluding that the plaintiff-prisoner's excessive force claims arose in a new context); *Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (determining that the plaintiff's Eighth Amendment excessive force claim arose in a new context and was therefore "presumptively non-cognizable"); *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) (federal prisoner's Eighth Amendment "failure to protect" claim presents a new context from the Eighth Amendment deliberate indifference claim in *Carlson*). Because even a "modest extension" of a prior Supreme Court case constitutes a new context, *Ziglar*, 582 U.S. at 147–48, the Court finds that the first part of the *Ziglar* test has been met here. The Court must therefore proceed to the second step of the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to these new contexts. *Ziglar*, 582 U.S. at 135–36.

Here, there are multiple reasons that a judicially-implied remedy for damages is not appropriate. First, alternative processes exist for protecting Mahaffey's rights—namely the BOP

8

Administrative Remedy Program. *See Anderson*, 2024 WL 1697766, at *3. The Sixth Circuit has recognized the substantiality of that program, which has its "own statutes of limitations, filing procedures, and appeals process," and the potential to retain counsel to assist with the process. *Id.* (quoting *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020)). *See also Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring").

The BOP Administrative Remedy Program is not considered less effective merely because it is created by regulation rather than by statute. *See Egbert*, 596 U.S. at 498 ("So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."); *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress.") (citation omitted). Nor is the grievance program considered a less effective remedy because it does not provide the deterrence afforded by damages. *See Schweiker v. Chilicky*, 487 U.S. 412, 421–22 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freeland v. Mattingly*, No. 1:20- CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

In addition, the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may serve to deter misconduct. *See Hower*, 2022 WL 16578864 at *3. "If there are alternative remedial structures in place, 'that

alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 137 S. Ct. at 1858). *See also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Additionally, there are good reasons to believe that implying such a remedy under *Bivens* would contravene congressional intent. Through 42 U.S.C. § 1983, Congress long ago created a statutory cause of action against state actors for violations of constitutional rights. But it has never done so for federal actors. To the contrary, more recently Congress has taken steps to curtail prisoner litigation, not expand it: Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA"), which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. There, "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Ziglar*, 582 U.S. at 148. Still, the PLRA does not "provide for a standalone damages remedy against federal jailers." *Id.* at 149. This may reflect Congress's decision "not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Ziglar*, 582 U.S. at 148–49 (citations omitted).

Finally, the context of Mahaffey's claim is significant, as "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial

restraint,'—counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id*. (quoting *Turner*, 482 U.S. at 85).

The Supreme Court has instructed that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492. Thus, because multiple factors counsel strongly against implying a *Bivens* remedy for Mahaffey's Eighth Amendment claims alleging excessive force and/or failure to protect, the Court will not do so here. Accordingly, his complaint will be dismissed because he has failed to state any claims upon which relief can be granted.

Finally, Mahaffey has filed a motion requesting the appointment of counsel. (DE 13) In support, Mahaffey cites his limited access to the law library, limited knowledge of the law, and an unidentified mental disability. Title 28 U.S.C. § 1915(e)(1) authorizes a federal court to appoint counsel to represent a *pro se* party in civil litigation, but only in truly exceptional circumstances. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003). When considering such a request, the Court assesses the complexity of the case, the movant's likelihood of success on the merits, and the plaintiff's ability to represent himself competently. In this case, Mahaffey's has demonstrated the ability to navigate administrative exhaustion, filing, and fee mechanics. These factors, coupled with the patent nonviability of Mahaffey's *Bivens* claims, indicate that this case does not present the kind of extraordinary circumstances that warrants the appointment of counsel.

Based on the foregoing analysis, the Court hereby ORDERS as follows:

1) Mahaffey's motion for the appointment of counsel (DE 13) is DENIED;

2) Mahaffey's claims are DISMISSED, with prejudice, and STRICKEN from the docket.

3) The Court will enter an appropriate Judgment;

This 14th day of November, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY